UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

PEREZ LARGAESPADA ELIEZER (A-NUMBER: 246-111-856),

Petitioner,

v.-

WARDEN OF THE CALIFORNIA CITY DETENTION FACILITY,

Respondent.

Case No.  1:26-cv-3996-TLN-JDP

ORDER; FINDINGS AND RECOMMENDATIONS

Petitioner Perez Largaespada Eliezer entered the United States in 2022 and was re-detained by ICE in 2025.  Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, claiming that his re-detention without a bond hearing violates the Fifth Amendment.  For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

In October 2022, petitioner entered the United States, was briefly detained by immigration officers, and then was released on his own recognizance.  ECF No. 8-1 at 3.  Petitioner is seeking asylum in removal proceedings.  ECF No. 1 ¶ 18.  In May 2025, petitioner was arrested for violating a protective order; the disposition of that charge is unknown.  *See* ECF No. 8-1 at 4.  On September 19, 2025, petitioner was arrested in California for vandalism, violating a protective

1

order, and trespass.  *Id*. at 2.  ICE records indicate that petitioner was convicted and sentenced to 82 days in jail.[1]  *See id*. at 4.

On December 4, 2025, upon petitioner's release from local authorities, he was re-detained by ICE.  *Id*. at 2-3.  There is no allegation or evidence that petitioner has been provided a bond hearing; on the contrary, respondent argues that petitioner is subject to mandatory detention.  *See* ECF No. 8 at 2.

## Procedural History

On May 26, 2026, petitioner filed a petition for writ of habeas corpus.[2]  ECF No. 1.  On the following day, the court referred the matter to me for further proceedings.  ECF No. 6.  On June 3, 2026, respondent filed an answer.  ECF No. 8.  On June 15, 2026, petitioner filed a traverse.  ECF No. 9.

## Legal Standard

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000).  "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."  *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."  *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  A district court's habeas jurisdiction includes challenges to immigration detention.  *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## Analysis

Petitioner claims that his re-detention without a bond hearing violates his Fifth

---

[1] ICE records do not specify on which charge(s) petitioner was convicted.  *See* ECF No. 8-1 at 4.  Respondent has not provided any other evidence for the court to determine the charge(s) on which petitioner has been convicted.

[2] Petitioner concurrently filed a motion for the appointment of counsel, ECF No. 3.  In light of my recommendation that the case be closed, this motion will be denied as moot.

Amendment Due Process rights.  ECF No. 1 ¶¶ 46-49.  Notably, respondent offers little response to petitioner's due process claim.  Instead, it advances an argument premised on the assertion that petitioner is an "applicant for admission" within the meaning of 8 U.S.C. § 1225(a) and that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  ECF No. 8 at 1-3.  In asserting this statutory argument, respondent "acknowledge[s] the cases to the contrary in this District," thereby conceding that a similar argument has been consistently rejected.  *See id*. at 3; *see also, e.g.*, *Lepe v. Andrews*, 801 F. Supp. 3d 1104, 1112 (E.D. Cal. 2025) (collecting cases).  Respondent does not explain what, if any, binding precedent supports their statutory position.  More fundamentally, respondent's focus is misplaced because it only address petitioner's due process argument through the lens of its statutory argument.

Courts analyze procedural due process claims in two steps: first, we consider whether there exists a protected liberty interest under the Due Process Clause, and, second, we evaluate what procedures are necessary to ensure that any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  I consider each in turn.

To determine whether a specific conditional release rises to the level of a protected liberty interest, courts have compared "specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey* [*v. Brewer*, 408 U.S. 471 (1971)]."  *Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010) (internal quotation marks and citation omitted).  In *Morrissey*, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  408 U.S. at 482.  The court observed that while "the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, the petitioner's "condition is very different from that of confinement in a prison."  *Id.*  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  *Id.*  The revocation of parole undoubtedly "inflicts a grievous loss

3

on the parolee." *Id.* (quotations omitted). Therefore, in *Morrissey*, the Supreme Court found that a parolee in a criminal case possessed a protected interest in "continued liberty." *Id.* at 481-84.

Recently, confronted with questions similar to those raised by petitioner, courts in this Circuit have found that noncitizens released from ICE custody acquire a liberty interest in their continued release. *See, e.g.*, *Labrador-Prato v. Noem*, No. 1:25-cv-1598-DC-SCR, 2025 WL 3458802, at *5 (E.D. Cal. Dec. 2, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025). "Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *Rico-Tapia v. Smith*, No. 1:25-cv-00379-SASPKJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 481-82 (1972)); *Shoimov v. Chestnut*, No. 1:25-cv-1603-CSK, 2026 WL 35624, at *5 (E.D. Cal. Jan. 6, 2026). I agree with the bulk of other courts to have considered the issues presented here and find that petitioner has a protected liberty interest in his continued release.

Immigration officials released petitioner on his own recognizance with parole in October 2022. ECF No. 8-1 at 3. Since his release, petitioner has lived in the United States, subject to ICE supervision but outside of ICE custody, for over three years. During that time, he has formed "enduring attachments of normal life." *See Morrissey*, 408 U.S. at 482. I conclude that petitioner's initial release and time out of custody have created a constitutionally protected liberty interest in continued release. *See Guillermo M. R. v. Kaiser*, No. 25-cv-5436-RFL, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, No. 25-cv-5259-JST, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding released noncitizens to have strong liberty interests).

Once a court has found that a noncitizen has a liberty interest in continued release, the court must next determine what procedural protections the government must afford the noncitizen before depriving him of that liberty interest. This requires balancing the factors laid out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). *See Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (applying *Mathews* factors in immigration detention context).

The *Mathews* test requires courts to consider:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews*, 424 U.S. at 335.

First, petitioner has a significant private interest in his continued release. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Petitioner acquired a private interest in continued release over the three years of his supervised release. *See Noori v. LaRose*, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States.").

Turning to the second *Mathews* factor, the risk of erroneous deprivation is high. Prior to releasing petitioner in 2022, immigration officers necessarily determined that he presented neither a danger to the community nor a risk of flight. *See Pinchi*, 792 F. Supp. 3d at 1034 (explaining that a petitioner's "release from ICE custody after his initial apprehension reflected a determination by the government that he was neither a flight risk nor a danger to the community"). Absent a bond hearing in front of a neutral arbiter, the risk of erroneous deprivation is high given the possibility that petitioner's re-detention will not be pursuant to a valid state interest. *See Omer G. G. v. Kaiser*, No. 1:25-cv-01471-KES-SAB, 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community.") (quoting *Zadvydas*, 533 U.S. at 690).

"Where, as here, '[the petitioner] has not received any bond or custody . . . hearing,' 'the risk of an erroneous deprivation [of liberty] is high' because neither the government nor [the petitioner] has had an opportunity to determine whether there is any valid basis for his detention." *Pinchi*, 792 F. Supp. 3d at 1035 (quoting *Singh v. Andrews*, No. 1:25-cv-00801, 2025 WL

1918679, at *7 (E.D. Cal. July 11, 2025)).  Respondent offers no evidence or argument indicating that any procedural safeguards were employed prior to petitioner's re-detention; more generally, it gives the court no reason to believe that any efforts were made to prevent erroneous deprivation of petitioner's liberty.  *See* ECF No. 8.  Accordingly, "the probable value of additional procedural safeguards, i.e., a bond hearing, is high."  *See A.E. v. Andrews*, No. 1:25-cv-0107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

"Third, the Government's interest in detaining Petitioner without notice, reasoning, and a hearing is 'low.'"  *Salazar v. Casey*, No. 25-cv-2784-JLS, 2025 WL 3063629, at *5 (S.D. Cal. Nov. 3, 2025) (citation omitted).  Indeed, respondent has provided no information about the additional burden that would fall on them as a result of being required to provide a pre-deprivation hearing.  *See* ECF No. 8.  "In immigration court, custody hearings are routine and impose a 'minimal' cost."  *Carballo v. Andrews*, No. 1:25-cv-0978-KES-EPG, 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025) (quoting *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

Accordingly, a consideration of the *Mathews* factors demonstrates that petitioner's re-detention without a pre-deprivation violates his due process rights.  Given this finding, I must determine the appropriate remedy.  Petitioner requests release or, alternatively, a bond hearing.  ECF No. 1 at 17.  Respondent does not address this issue.  *See* ECF No. 8.

The Supreme Court has recognized that "[h]abeas is at its core a remedy for unlawful executive detention," and the "typical remedy for such detention is, of course, release."  *Munaf v. Geren*, 553 U.S. 674, 693 (2008); *see also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure *release* from unlawful detention.").  To satisfy due process, "the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property."  *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original).  In some circumstances, however, the Court has held that a post-deprivation hearing satisfies due process, such as where there is "the necessity of quick action by the State or the impracticality of providing any predeprivation

process." *Id*. at 128 (cleaned up).  Where a petitioner is entitled to a pre-deprivation hearing, courts have found that "[t]he appropriate relief . . . is their immediate release from custody, and to be provided with relief returning them to status quo ante, i.e., the last uncontested status which preceded the pending controversy." *Cardin Alvarez v. Rivas*, No. 25-cv-2943-PHX-GMS, 2025 WL 2898389, at *21 (D. Ariz. Oct. 7, 2025), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

Here, between his release in March 2022 and his initial arrest in May 2025, there is no evidence that petitioner failed to comply with the terms of his release.  While ICE records indicate that petitioner was convicted and sentenced to jail in September 2025, records do not specify the charge or charges of which petitioner was convicted; instead, records show that he was arrested and charged with vandalism, violation of a protective order, and trespass.  *See* ECF No. 8-1 at 4.  Respondent has not provided any other evidence regarding petitioner's criminal history, such as a RAP sheet, an arrest report, or court records.  More fundamentally, there is no evidence, and respondent has presented no argument, suggesting that there was "the necessity of quick action" by ICE such that petitioner could not have been provided a pre-deprivation hearing after he was released from local custody on December 4, 2025.  *See Zinermon*, 494 U.S. at 128. Indeed, respondent does not presently argue that petitioner is a danger to the community or a flight risk.  *See* ECF No. 8.

Additionally, there is no indication that a pre-deprivation hearing was unnecessary because petitioner was already in local law enforcement custody when he was re-detained; on the contrary, courts have found that a pre-deprivation hearing is still required where the petitioner is initially arrested by local law enforcement and then transferred to ICE custody.  *See Osorto v. Warden of Mesa Verde Det. Facility*, No. 1:26-cv-2915-DJC-JDP, 2026 WL 1224248, at *4 (E.D. Cal. May 5, 2026), *report and recommendation adopted*, 2026 WL 1330554 (E.D. Cal. May 13, 2026)*; Adamchuk v. Casey*, No. 3:26-cv-1149-RBM-VET, 2026 WL 785532, at *1-2 (S.D. Cal. Mar. 20, 2026).

Under these circumstances, I find that the "typical remedy" of release is appropriate because the government has not provided a lawful justification for re-detaining petitioner without

a pre-deprivation hearing. *See Munaf*, 553 U.S. at 693. Petitioner's due process rights have been violated such that the appropriate relief is immediate release from custody, thereby returning his to the "status quo ante." *See Cardin Alvarez*, 2025 WL 2898389, at *21.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motion for the appointment of counsel, ECF No. 3, is DENIED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 246-111-856) from its custody. Respondent shall not impose any additional restrictions on petitioner, unless that is determined to be necessary at a future pre-deprivation/custody hearing. If the government seeks to re-detain petitioner, it must provide no less than seven days' notice to petitioner and must hold a pre-deprivation bond hearing before an immigration judge at which the government shall bear the burden of justifying petitioner's detention by clear and convincing evidence. This order does not address the circumstances in which respondent may detain petitioner in the event petitioner becomes subject to an executable final order of removal.

3. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.


Dated:    June 17, 2026

_____
JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE